UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-CV-24447-HUCK

RENE MESA,

    Plaintiff,

vs.

AMERICAN EXPRESS EDUCATIONAL
ASSURANCE COMPANY,
AMERICAN EXPRESS, and
TRANSWORLD SYSTEMS INCORPORATED,

    Defendants.
_____/

## ORDER

THIS CAUSE is before the Court upon American Express Company and American Express Educational Assurance Company's Motion to Dismiss . . . ("Motion") [ECF No. 26], filed February 22, 2017. Plaintiff Rene Mesa ("Mesa") filed a Motion in Opposition 12(B)(6) . . . ("Response") [ECF No. 29] on March 15, 2017. Defendants American Express Company ("Amex") and American Express Educational Assurance Company ("AEEAC") filed their Reply Memorandum . . . ("Reply") [ECF No. 35] on March 28, 2017. The Court has carefully considered the parties' submissions, the record, and applicable law.

## I. BACKGROUND[1]

Mesa filed his Amended Complaint on February 7, 2017 [ECF No. 22], in which he alleges eight separate violations: Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692d (Count I); FDCPA, 15 U.S.C. § 1692e(2) (Count II); FDCPA, 15 U.S.C. § 1692e(8) (Count III);

---

[1] The Court takes the allegations from the Amended Complaint [ECF No. 22], the operative complaint in this case, as true for purposes of a Motion to Dismiss. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

FDCPA, 15 U.S.C. § 1692e(10) (Count IV);[2] FDCPA, 15 U.S.C. § 1692e(11) (Count V); Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559 (Count VI); Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count VII); and Negligent Hiring and Supervision (Count VIII). Counts VI, VII, and VIII are the only allegations against Amex and AEEAC.

Mesa alleges that he received calls to his cellular telephone "several times within the last four years, by use of an automated telephone dialing system." (Am. Compl. ¶ 31). The caller represented that the call was on behalf of Defendant Transworld Systems Inc. ("Transworld"), but "failed to provide meaningful identification as debt collector at the inception of the calls." (*Id.* ¶ 32). "Plaintiff received several telephone calls from different telephone numbers." (*Id.*). Plaintiff received these calls "after numerous requests to cease and desist" and after settling a federal lawsuit against Defendant NCO Financial Systems[3] in case 13-cv-23131-UU. (*Id.* ¶ 33). The final call Mesa received from Transworld was on or about October 22, 2015. (*Id.* ¶ 34).

When Mesa returned the telephone calls, Transworld did not advise him that it was attempting to collect a debt nor did Transworld identify itself as a debt collector. (*Id.* ¶ 35). Although Mesa did not consent to being recorded during the phone calls, the representative indicated that she could not turn off the recorder. (*Id.* ¶ 36). Only after obtaining Mesa's private information did the representative indicate that she was a debt collector. (*Id.*). The Transworld representative refused to identify herself as a debt collector until after Mesa provided his identification information. (*Id.* ¶ 37). Mesa subsequently called Transworld various times, and a different representative informed Mesa that he owed $10,945.85. (*Id.* ¶ 39). The representative

---

[2] Misa mistakenly labels this "Count VI" instead of "Count IV."

[3] The Court dismissed Defendant NCO Financial Systems from this case without prejudice on March 21, 2017 [ECF No. 32].

2

told Mesa that if he made late payments, "those late payments would not appear on the credit report." (*Id.*). However, "[t]he late payments did appear on Plaintiff's credit report." (*Id.*). Plaintiff "expressed his frustration" to a supervisor regarding late payments on his credit report "that never took place." (*Id.* ¶ 40).

The Transworld supervisor informed Mesa that the original lender for the loan was AEEAC and that "further inquiry regarding the false late payments that appeared in [the] credit report should be taken up with them." (*Id.* ¶ 41). Plaintiff sent Transworld a notice of dispute regarding the "false late payments" on his credit report, and Transworld "failed to list the debts as disputed." (*Id.*). Mesa alleges that "[b]y reporting misleading information regarding the nature and/or status of said alleged debt with respect to such matters as the identity of the original creditor, the relevant dates and ages of said alleged debt, and other matters which these Defendants knew or should have known would mislead," Defendants violated the law. (*Id.*). The late payment entries were removed from the credit report after several months. (*Id.*).

Mesa's credit report provided that he had "missed 14 payments within the last four (4) years," when in fact "[t]hese were defaulted student loans and no payment was ever made on them." (*Id.* ¶ 43). The Defendants AEEAC, Amex, and Transworld "knowingly, willfully[,] and with malice listed seventy-two (72) false and derogatory entries in Plaintiff's credit with Equifax, Experian[,] and Transunion . . . in order to coerce payment." (*Id.*). Mesa did not consent to receive calls from Transworld. (*Id.* ¶ 44). AEEAC, Amex, and Transworld "engaged in a knowingly, willfully[,] and with malice attempt to collect a debt by providing knowing false and deceptive credit information to the Credit Bureaus in an attempt to collect a debt." (*Id.* ¶ 45). Mesa's telephone number is unlisted, he does not do business with Transworld, and he never consented to Transworld's use of his private financial information and telephone number. (*See id.* ¶¶ 44, 46–

3

47).

Mesa alleges that AEEAC "controls, directs, manages, oversees, supervises, profits from[,] and engages in debt collection directly and indirectly through" Transworld and is "responsible to the acts of their agents under agency." (*See id.* ¶ 48). As such, AEEAC "is required to make certain that their employees, agents[,] and servants engage in collection efforts that are compliant with the TCPA, FDCPA[,] and the FCCPA." (*See id.*). Likewise, Mesa alleges that Amex "controls, directs, manages, oversees, supervises, profits from[,] and engages in debt collection directly and indirectly through" Transworld and is "responsible to the acts of their agents under agency." (*See id.* ¶ 49).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

When reviewing a motion to dismiss, a court must construe the complaint in the light most

4

favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

Mesa contends that Amex and AEEAC are legally responsible for telephone calls that Transworld allegedly made to him. (Am. Compl. ¶¶ 31–41, 48–49). He alleges that AEEAC and Amex control, direct, manage, oversee, supervise, profit from, and engage in debt collection directly and indirectly through their agent Transworld. (*See id.* ¶¶ 48–49). Defendants AAEAC and Amex argue that the claims against them should be dismissed "because there are no well-pleaded facts supporting the alleged existence of their agency relationship with" Transworld. (Mot. 5). Rather, Defendants maintain that Mesa's "conclusory agency allegations do not rise beyond the speculative level" and that Counts VI, VII, and VII "should accordingly be dismissed for failure to state a claim." (*Id.*).

"As a general rule, a principal may be held liable for the acts of its agent that are within the course and scope of the agency." *Roessler v. Novak*, 858 So. 2d 1158, 1161 (Fla. 2d DCA 2003). "Although some agencies are based upon an express agreement, a principal may be liable to a third party for acts of its agent which are within the agent's apparent authority." *Id.* "Apparent authority is authority which a principal knowingly tolerates or permits, or which the principal by its actions or words holds the agent out as possessing." *Id.* "An apparent agency exists only if all three of the following elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the

5

representation." *Id.* "Apparent authority does not arise from the subjective understanding of the person dealing with the purported agent or from appearances created by the purported agent himself." *Id.* at 1162. "Rather, apparent authority exists only where the principal creates the appearance of an agency relationship." *Id.* "For actual authority to exist such that the principal is bound, there must be an agency relationship, which requires: (1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent." *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (11th Cir. 2003).

Mesa has alleged very little factually with respect to the purported agency relationship between Amex and Transworld or AEEAC and Transworld. First, Mesa alleges that Kirsten Balko, a Transworld supervisor, informed him that AEEAC "was the original lender and that further inquiry regarding the false late payments that appeared in [his] credit report should be taken up with them." (Am. Compl. ¶ 41). Then, Mesa makes conclusory allegations regarding Amex and AEEAC's control, management, oversight, and supervision of the debt collection activities of Transworld. (*See id.* ¶¶ 48–49). Mesa has made no factual allegations to support either an apparent or an actual agency relationship between Amex and Transworld or AEEAC and Transworld. The only non-conclusory allegation remotely related to the relationship between Amex and Transworld or AEEAC and Transworld is the Transworld supervisor's statement regarding AEEAC as the original lender, and even construing that statement broadly, it provides no support for agency, as appearances of agency "created by the purported agent" are not sufficient to create apparent authority. "Apparent authority does not arise from the subjective understanding of the person dealing with the purported agent or from appearances created by the purported agent himself." *Roessler*, 858 So. 2d at 1162.

6

While it is true that "[t]he existence of an agency relationship is normally one for the trier of fact to decide," *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 853 (Fla. 2003), Plaintiff is also required at the pleading stage of his case to raise a right to relief beyond mere speculation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mesa must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See id.* In fact, Mesa has not even attempted to allege the elements of the agency relationship here. While the Court recognizes that Plaintiff is proceeding in this case *pro se*, Plaintiff is not new to the federal court system. Indeed, Plaintiff has filed numerous cases in this Court over the previous three or four years. Therefore, the Court holds Plaintiff to a higher standard than if this were Plaintiff's first exposure to the rules of this Court. And *pro se* parties are not exempt from following the law and procedures of the Court.

## IV. CONCLUSION

Having failed to state a viable cause of action against Defendants Amex and AEEAC, Plaintiff's claims against these Defendants are dismissed under Federal Rule 12(b)(6). The Court shall provide Plaintiff with one final opportunity to amend his complaint to assert sufficient allegations against Amex and AEEAC, <u>only if such factual allegations can be made in good faith</u>. In the interest of clarity, Plaintiff is advised to allege and identify specific facts to support each element of each alleged violation in each count. Plaintiff should provide a "short and plain statement" of the claims and include only those facts relevant to each claim. *See* Fed. R. Civ. P. 8(a). Plaintiff is further admonished to write clearly and concisely, avoiding tangential history lessons or extraneous information. Any reference to exhibits, attachments, or law must be clearly cited within the complaint whenever possible. **Failure to comply with these requirements may result in striking some or all of Plaintiff's claims.** Accordingly, it is

**ORDERED AND ADJUDGED** that Amex and AEEAC's Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted [ECF No. 26] is **GRANTED**. This action is **DISMISSED without prejudice as to as to Counts VI, VII, and VIII against Defendants Amex and AEEAC. Plaintiff is granted leave to file an amended complaint on or before Monday, June 12, 2017.** Plaintiff shall not be granted any further opportunities to amend the complaint after that time. If Plaintiff chooses to file an amended complaint by the deadline, Plaintiff shall comply with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida. Moreover, in determining whether to file an amended complaint, Plaintiff should take into consideration his obligations under Rule 11 of the Federal Rules of Civil Procedure.

**DONE AND ORDERED** in Miami, Florida this 18th day of May, 2017.

Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record

Rene Mesa, *Pro Se*
7014 NW 169th St
Miami, FL 33015
305-744-6134
theforexdoctor@yahoo.com